Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Christina W. Stephenson
State Bar No. 24049535
PRONSKE & PATEL, P.C.
1700 Pacific Avenue, Suite 2260
Dallas, Texas 75201
(214) 658-6500– Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com

ATTORNEYS FOR TOWN OF MARSHALL CREEK, TEXAS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| § | | |
| **TOWN OF MARSHALL CREEK,** § | **CASE NO. 06-40072** | |
| **TEXAS,** § | | |
| § | **Chapter 9** | |
| Debtor. § | | |

## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

The Town of Marshall Creek, Texas (the "Debtor" or "Marshall Creek") proposes the following Third Amended Plan of Reorganization (the "Plan").

## ARTICLE I

## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a reorganization of all liabilities owed by Marshall Creek, as described herein.  The Plan provides for such reorganization through two alternatives.  The primary alternative shall be a Consolidation of the Town of Marshall Creek, Texas, with the City of Roanoke, Texas ("Roanoke"), effective with elections to be held in each municipality pursuant to the Texas Local Government Code, with the assumption of Marshall Creek's restructured liabilities by Roanoke.  In the event that the voters of both municipalities do not approve the Consolidation, the secondary alternative will be a payment over time by Marshall Creek of its restructured liabilities as provided for herein.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein in accordance with the priority scheme established by the Code.

**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION – Page 1**

## ARTICLE II

## **DEFINITIONS**

As used in this Plan, the following terms shall have their respective meanings set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1     Administrative Claims:  Any claim for payment of any cost or expense of administration of the Chapter 9 Bankruptcy Proceeding entitled to priority in accordance with §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all compensation and reimbursement for Professional Persons in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under the Code.

2.2     Allowed Claim or Allowed Interest:  Any Claim (a) allowed under this Plan; or (b) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtor in its list of creditors filed under Bankruptcy Rule 1007(e) as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.3     Allowed Priority Claim:  All or that portion of any Priority Claim which is or has become an Allowed Claim.

2.4     Bankruptcy Code:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 9 case, § 101 et seq. Title 11, United States Code.

2.5     Bankruptcy Rules:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.6     Business Day:  Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.7     Cash:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.8     Causes of Action:  All causes of action of any kind, whether legal or equitable, of the Debtor, for affirmative recovery of Cash or other property of the Estates existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.9     Chapter 9 Case:  The Chapter 9 case of the Town of Marshall Creek, Texas, case number 06-40072.

2.10    Claim:  Any right against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.11    Collateral:  Property in which the Debtor has an interest that secures, in whole or in part, payment of an Allowed Claim.

2.12    Confirmation:  Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.13    Confirmation Date:  The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.14    Confirmation Hearing:  The date set by the Court to consider confirmation of the Plan pursuant to section 943 of the Bankruptcy Code.

2.15    Confirmation Order:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.16    Consolidation: The Consolidation of the Town of Marshall Creek, Texas, with the City of Roanoke.

2.17    Consolidation Date:  The date upon which the Consolidation of the Town of Marshall Creek, Texas, and the City of Roanoke, Texas, would be effective under section 61.006(b) of the Texas Local Government Code.

2.18    Court:  The United States Bankruptcy Court for the Eastern District of Texas or such other Court as may have jurisdiction of this Chapter 9 Case.

2.19    Creditor:  Any entity that is the holder of a claim or an interest, including but not limited to: (a) a claim that arose on or before the Petition Date, (b) a claim against the Debtor's

Estate of any kind specified in § 502(g), § 502(h), or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.20   Creditor Repayment Fund.  That sum of $201,610 in Cash that shall be utilized to pay Unsecured Creditors as further provided herein plus any amounts necessary to pay additional agreed Claims provided in the Confirmation Order or other order of the Bankruptcy Court.

2.21   Debtor:  Town of Marshall Creek, Texas.

2.22   Disclosure Statement:  The written Disclosure Statement in respect to this Plan approved by the Court pursuant to §1125 of the Bankruptcy Code, as incorporated by §943.

2.23   Disputed Claim:  Any claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.24   Effective Date:  The date thirty (30) calendar days after the Consolidation Date or in the event the Consolidation does not occur, the later of November 16, 2007 or ten (10) days after the entry of the Confirmation Order.

2.25   Estate:  The Estate created in the Chapter 9 Case for the Debtor by Code § 902(1).

2.26   Final Distribution:  Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.27   Final Order:  An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.28   Holder or Claimholder:  Any entity that is the holder of a claim, including but not limited to (a) a claim that arose on or before the Petition Date, (b) a claim against the Debtor's Estate of any kind specified in § 502(g), § 502(h) or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.29   Impaired:  When used with respect to any claim, interest or class, it has the same meaning as that contained in §1124 of the Bankruptcy Code, as incorporated by §901(a).

2.30   Order:  An order or judgment of the Bankruptcy Court as entered on the docket.

2.31   Petition Date:  January 23, 2006.

2.32   Priority Claims:  Allowed Claim entitled to a priority under Bankruptcy Code §507(a)(2).

2.33 <u>Pro Rata</u>:  Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of All Allowed Claims of the class in which the particular Allowed Claim is included in the amount of All Allowed Claims of that Class.

2.34 <u>Professional Person</u>:  Any entity retained or to be compensated in connection with the Bankruptcy Case.

2.35 <u>Reorganized Debtor</u>:  The legal entity that shall survive the Debtor as of the Confirmation Date.

2.36 <u>Plan</u>:  The Plan proposed by the Debtor, either in its present form or as it may be amended or modified.

2.37 <u>Undetermined Claim</u>:  A claim that is (a) a Disputed Claim; (b) a claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined administrative claim in respect of an application of a professional person; or (d) a claim that is unliquidated or contingent.

2.38 <u>Unsecured Claim</u>:  Any claim against the Debtor whatsoever, other than 1) a Secured Claim, or 2) a Claim that is entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code.

# ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS

3.1 <u>Designation of Classes of Claims</u>:  The following is a designation of the Classes of Claims under this Plan. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

Class 1:  Allowed Administrative Claims.

Class 2:  General Unsecured Claims (impaired).

# ARTICLE IV

## PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1     <u>Administrative Claims</u>: (Class 1) – Except to the extent that the holder of an Administrative Expense Claim may otherwise agree in writing, Administrative Expense Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan.  In the event that the Creditor Repayment Administrative Expense Claims cannot be paid in full on the Effective Date and the holder of such Claim agrees to be paid following the Effective Date, they shall be paid in full prior to any payments being made on account of the Class 2 General Unsecured Claims.

The following Administrative Claims shall be paid on the Effective Date unless the holder of the Administrative Claim agrees to a different date for payment:

| **Claimant** | **Amount** |
|---|---|
| Pronske & Patel, P.C.: | $60,235.83 |
| Tasker & Peterson | $17,887.81 |

Proposed Administrative Claims, if approved by the Bankruptcy Court, as applicable under Chapter 9 of the Bankruptcy Code, to paid as stated above on the Effective Date or such other date to which the holder of the Administrative Claim may agree are as follows:

| **Claimant** | **Amount** |
|---|---|
| Texas Workforce Commission: | $0 |
| Texas Comptroller of Public Accounts: | $0 |

# ARTICLE V

# TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     General Unsecured Claims:  (Class 2) – Class 2 Allowed General Unsecured Claims shall be paid in the following amounts in full satisfaction of their Claims:

| CLAIMANT | AMOUNT OWED | AMOUNT TO BE PAID – Plan A | AMOUNT TO BE PAID – Plan B |
| --- | --- | --- | --- |
| Internal Revenue Service | 67,399 | 67,399 | 67,399 |
| Armstrong & Associates | 65,339 | 65,339 | 65,339 |
| Trinity River Authority | 145,914 | 0 | 145,914 |
| Texas Commission on Environmental Quality | 13,313 | 13,313 | 13,313 |
| First State Bank of Stratford | 47,609 | 47,609 | 47,609 |
| Southern Automated Systems, Inc. | 3,458 | 3,458 | 3,458 |
| First Government/J. Sansone | 362 | 362 | 362 |
| Vendors | | | |
| First Government | 735 | 735 | 735 |
| Texas Comptroller of Public Accounts | 27,506 | 27,506 | 27,506 |
| TOTAL | $371,635 | $225,721 | $371,635 |

In the event that the Consolidation described in Article VI of this Plan is successful, these amounts shall be in full in Cash 30 days following the Consolidation Date.  In the event that the Consolidation described in Article VI of this Plan is not effective, these amounts shall be paid, without interest, over a period of thirty-five  (35) years from the Effective Date, with equal annual installments to be paid beginning on the date that is the first anniversary of the Effective Date, with thirty four (34) equal annual installments on the following anniversaries of the Effective Date.

In the event that there are any Claims against the Debtor that are not included in the above description of Claims, the Creditor and Marshall Creek shall attempt to agree to the Allowed amount of such Claim.  In the event that the parties cannot reach an agreement, either party may request the Court to resolve the Allowed amount of such Claim as a part of the implementation and interpretation of this Plan.  In the event that no objection to the amounts stated above are filed by any Creditor, those amounts shall be binding on the Debtor and the Creditor.

The Class 2 General Unsecured Claims are impaired under the Plan.

5.2     Water Deposit Claimants:     Class 3 - The Reorganized Debtor shall reserve in a segregated bank account styled Water Deposit Reserve sufficient amounts to reimburse residents of the Debtor who have unpaid and/or unreturned water deposits.  The residents shall be repaid

in the ordinary course of dealings from the Water Deposit Reserve, as provided by any applicable agreement and/or law.

The Class 3 Water Deposit Claimants are unimpaired under the Plan and are conclusively presumed to have voted on the Plan pursuant to § 1126 of the Bankruptcy Code.

5.3   Payments to the United States Trustee:  The Reorganized Debtor shall pay all quarterly fees of the United States Trustee until the Case is closed as provided by Chapter 9 of the Code, if any.

## ARTICLE VI

## MEANS OF IMPLEMENTING THE PLAN

6.1   Alternative Means of Plan Implementation – Summary of Plan A and Plan B.

6.1.1   Plan A: Consolidation of the Town of Marshall Creek, Texas with the City of Roanoke, Texas:   The primary means of implementation of this Plan will be a Consolidation of the municipalities of the Town of Marshall Creek with the City of Roanoke under the Texas Local Government Code, section 61.001, et seq.  Under such a Consolidation, which is outlined in more detail below, the liabilities of Marshall Creek, as treated herein, will be assumed by the City of Roanoke, and paid into the Creditor Repayment Fund within 60 days of the Consolidation Date.  Creditors will then be paid as described in Article V above.  This proposed Consolidation of Marshall Creek and Roanoke will require valid petitions of voters of both municipalities, Town and City Council approval in both municipalities, and approval of voters of each municipality in elections.  Therefore, the success of Consolidation cannot be predicted with certainty.  In the event that the Consolidation is not effective, the Creditors will be repaid under Plan B, below.

6.1.2   Plan B: Repayment of Creditors through future revenues of Marshall Creek:   In the event that Plan A is unsuccessful, the amounts described in Article 5 of this Plan shall be paid, without interest, over a period of seven (7) years from the Effective Date, with equal annual installments to be paid beginning on the date that is the first anniversary of the Effective Date, with six (6) equal annual installments on the following anniversaries of the Effective Date from the Revenues of Marshall Creek.

6.2   Consolidation of Marshall Creek and Roanoke.  Section 61.001 of the Texas Local Government Code[1] gives two or more contiguous municipalities in the same county the authority to consolidate under one government in the manner provided by Chapter 61 of the

---

[1] All references to "Sections" in this Article VI of the Plan are to the Texas Local Government Code, unless specifically otherwise provided.

**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION – Page 8**

Texas Local Government Code. Section 61.002 provides that a municipality Consolidation must be approved at an election ordered and held for that purpose. Section 943(b)(4) of the Bankruptcy Code provides that the debtor cannot confirm a plan if the plan contains provisions that are "prohibited by law." This would include the Texas municipality requirement that the Consolidation must be approved at an election. Therefore, the Consolidation of the municipalities of Marshall Creek and Roanoke will require Consolidation elections in both municipalities.

      6.2.1    Consolidation Procedure:

1) A petition will be presented to qualified voters in both Marshall Creek and Roanoke requesting a Consolidation of Marshall Creek into Roanoke. The petition will meet the requirements of Section 61.003(a).

2) In the event that the petitions are validly signed under Section 61.003(a), elections shall be held at the municipality's regular polling places. Sections 61.003(a).

3) Marshall Creek will have the first election, and it will be held within 45 days after the date that the petition is filed as required under Section 61.004(a).

4) If a majority of Marshall Creek voters approves the Consolidation, Roanoke's City Counsel can then order a Consolidation election of its voters. Roanoke's City Council would have to act within 45 days after the date the election returns from Marshall Creek are canvassed. Section 61.004(b).

5) Both of the elections will take place on the "first authorized uniform election date" prescribed by the Election Code that occurs on or after the 30th day after the date the election is ordered, unless a court of competent jurisdiction or the Governor of the State of Texas orders otherwise. Marshall Creek intends to shorten this process by obtaining such an alternative order from a court of competent jurisdiction or the Governor of the State of Texas. The procedure outlined herein assumes that such an order will not be obtained.

    6.2.2   Consolidation Timing:

1) Section 41.001(a)(1) of the Texas Election Code provides that the next authorized uniform election date is the "second Saturday in May," which is May 12, 2007.

2) Reading these statutes together, the Marshall Creek petition for Consolidation would have to be filed with the Town Counsel after March 28, 2007. The election would then have to be ordered by the Marshall Creek Town Council on or before April 12, 2006. Therefore, the Marshall Creek Town Council meeting would have to be scheduled for between March 28, 2007 and April 12, 2007.

3) After the election results of Marshall Creek are canvassed, and provided the election results favor the Condolidation bhy a majority of the voters, the City Council of Roanoke would have 45 days to order an election of its voters. That election would take place on the next "authorized uniform election date prescribed by the Election Code," which is November 6, 2007. Texas Election Code, Section 41.001(a)(2).

4) The Consolidation would be deemed effective when the election returns are recorded. Section 61.006(b).

    6.2.3   Effect of Consolidation:

1) Section 61.008 provides the effect of a Consolidation would be that Marshall Creek:

    a. adopt the charter, ordinances, and, unless otherwise provided at the time of the Consolidation, the name of Roanoke;

    b. would be included in the territory of Roanoke; and

    c. would be subject to Roanoke's laws and regulations of the largest municipality

2) Roanoke would assume all outstanding liabilities of Marshall Creek under Section 61.009(c), as provided for in Article V of this Plan.

    6.3   Failure of Effectiveness of Consolidation. In the event that the effort to consolidate Marshall Creek with Roanoke (Plan A), as outlined above, Marshall Creek shall pay the Creditors from its revenues over a period of seven (7) years from the Effective Date (Plan B), as described in Article V herein.

**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION – Page 10**

6.4 <u>Documents</u>: All necessary documents for the implementation of this Plan, shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter the Court shall have resolved said issues, and all such documents shall be binding on the Debtor, the creditors, and all other parties hereto.

6.5 <u>Rights Under 11 U.S.C. §1129(b), as incorporated by §901(a)</u>: If any impaired class votes to accept the Plan, but not all classes accept the Plan, Debtor will seek confirmation under the cram down provision of §1129(b) of the Bankruptcy Code, as incorporated in Chapter 9, and hereby gives notice of intent to invoke the cram down provisions of §1129(b) in that event.

6.6. <u>Administrator of Creditor Repayment Fund</u>. After Consolidation, as set forth in Section 6.1.1 above, monies payable to the Creditor Repayment Fund shall be paid into the IOLTA trust account of Pronske & Patel, P.C. Thereafter, Pronske & Patel, P.C. shall act as administrator of the Creditor Repayment Fund and shall remit the payments, if any, to creditors as outlined in Article V above. As compensation for its services as administrator of the Creditor Repayment Fund, Pronske & Patel, P.C. shall be remunerated at standard hourly rates for its attorneys and paraprofessionals, payable by the City of Roanoke.

6.7 Default with respect to claims of Internal Revenue Service:

a. Events of Default. The occurrence of any of the following shall constitute an event of default under the Plan:

> 1) Failure to Make Payments. Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:
>
>> (A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.
>>
>> (B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed

liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242 attn Leo Carey.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

## ARTICLE VII

## PROVISIONS FOR THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     <u>General Assumption of Executory Contracts</u>:     All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly rejected on or before 90 days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to section 365 of the Code, as incorporated by section 901(a). Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtor, or the Debtor-in-Possession has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption under section 365 of the Bankruptcy Code as of the Effective Date. The Reorganized Debtor shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following confirmation of this Plan.

7.2     <u>Cure of Defaults</u>: The Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of section 1123(a)(5)(G) and 365 (b) of the Code, as incorporated by section 901(a), by paying the amount, if any, claimed by any

party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if, the Reorganized Debtor files, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing in respect of the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtor on the later of: (1) ten (10) Business Days after the expiration of the sixty day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

      7.3    <u>Claims for Damages</u>:  Any claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 6 claims. Any claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

      7.4    <u>Reservation of Rights</u>:  The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to 90 days after the Confirmation Date.

      7.5    <u>Proofs of Claims</u>:  Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

## ARTICLE VIII

## MODIFICATION OF THE PLAN

      8.1    <u>Amendments Prior to Confirmation Date</u>:  Debtor may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Reorganization.

8.2 <u>Amendments After Confirmation Date</u>: Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3 <u>Effect on Claims</u>: A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1 <u>Purposes</u>: Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 9 case for the following purposes:

 i. to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

 ii. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

 iv. to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint or otherwise;

 v. to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

 vi. to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

 vii. to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

<u>**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION** – Page 14</u>

 viii. to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

 ix. to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtor from creditor actions;

 x. to hear any other matter not inconsistent with Chapter 9 of the Bankruptcy Code;

 xi. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

 xii. to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

 xiii. to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

 xiv. to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

 xv. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

 xvi. to enter a Final Order and final decree closing the Chapter 9 case.

 9.2 <u>Exclusive Jurisdiction</u>:  The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

 9.3 <u>Abstention</u>:  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 9 case, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**<u>DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION</u> – Page 15**

  9.4 <u>Closing of Case</u>:  The Reorganized Debtor shall file an application for final decree and to close the Chapter 9 Case and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Court within such period why the Court should not enter a final decree.  Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 9 Case, and jurisdiction shall be retained over such proceeding.

## ARTICLE X

## CAUSES OF ACTION

  10.1 <u>Retention of Causes of Action</u>:  All Claims and causes of action owned by the Debtor, causes of action that could have been brought by a Creditor on behalf of the Debtor, and all causes of action created by the Bankruptcy Code not waived or released under the Plan shall be pursued by the Reorganized Debtor for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.  The Reorganized Debtor shall have the exclusive right to settle or compromise all such causes of action subject to Court approval.  Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

## ARTICLE XI

## RESOLUTION OF UNDETERMINED CLAIMS

  11.1 <u>Procedure</u>:  Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or Interest to which such objection pertains.  Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle or withdraw objections to contested claims.

  11.2 <u>Allowance of Claims</u>:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Debtor makes any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

  11.3 <u>Rights of Creditors</u>:  Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held or reserved by the Reorganized Debtor with respect to such claim.

<u>**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION**</u> **– Page 16**

## ARTICLE XII

## **GENERAL PROVISIONS**

  12.1 <u>Certain Rights Unaffected</u>:  Except as otherwise provided herein, any rights or obligations which the Debtor's creditors may have among themselves as to their respective claims or the relative priority or subordination thereof.

  12.2 <u>Headings</u>:  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretations of this Plan.

  12.3 <u>Severability</u>:  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

  12.4 <u>Governing Law</u>:  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

  12.5 <u>Successors and Assigns</u>:  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

  12.6 <u>Discharge of Claims</u>:  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by section 944(b) of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtor shall be, and shall be deemed to be discharged; and all holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

  12.7 <u>Discharge of Debtor</u>:  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by section 944(b) of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a claim based

upon such debt as allowed under section 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Except as provided herein, pursuant to section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of any of them, to the extent it relates to a claim discharged.

      12.8   <u>Exculpations</u>:  The Debtor's professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

      12.9   <u>Injunctive Relief</u>:  Except as provided herein, on and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

Dated:  October 16, 2007

**Town of Marshall Creek, Texas**

By: /s/James Macy-Simpson
     James Macy-Simpson, its Mayor

OF COUNSEL:

By:  /s/ Gerrit M. Pronske
Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Pronske & Patel, P.C.
1700 Pacific Avenue, Suite 2260
Dallas, Texas 75201
(214) 658-6501 - Telephone
(214) 658-6509 - Facsimile
gpronske@pronskepatel.com - Email
rpatel@pronskepatel.com – Email